UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

HENRY SEARCY, JR.
12804 Willow Marsh Lane
Bowie, Maryland 20720
(301) 560-8436

VS.

DEMAURICE F. SMITH
National Football
 League Players Association
1133 20TH Street
Washington, DC 20036

&

MICHAEL P. SAWICKI
ProMetric
1501 South Clinton Street
Baltimore, Maryland 21224

Case: 1:19–cv–00921
Assigned To : Walton, Reggie B.
Assign. Date : 4/2/2019
Description: Pro Se Gen. Civ. (F-DECK)

## COMPLAINT

NOW COMES the Plaintiff, Henry Searcy, Jr., appearing pro se, and

brings suit against the named Defendants and for cause states as follows:

## STATEMENT OF FACTS

1. In 2014, the Plaintiff completed an "Application for Certification as a National Football

League Players Association (NFLPA) Contract Advisor" to become a certified contract advisor



1

RECEIVED
APR - 2 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

for the NFLPA.  A clause in the application stated "….In submitting this application, I agree to comply with and be bound by these Regulations (including, but not limited to the maximum fee schedule), which are incorporated herein by reference and any subsequent amendments thereto." The "Application for Certification as an NFLPA Contract Advisor" also stated that "….In consideration for the opportunity to obtain Certification and in consideration of the NFLPA's time and expense incurred in the processing of my application for such certification, I further agree that this Application for the Certification, if one is issued to me, along with the NFLPA Regulations Governing Contract Advisors shall constitute a contract between the NFLPA and myself…." (A copy of the Application for Certification as an NFLPA Contract Advisor is attached as Exhibit 3-Appendix A and incorporated herein by reference).

2. On June 12, 2014, the NFLPA informed the Plaintiff that his "Application for Certification as an NFLPA Contract Advisor", was deemed eligible for certification by the NFLPA, subject to two additional steps: 1.) the Plaintiff must attend the NFLPA Contract Advisor Seminar for new applicants, and 2.) the Plaintiff must receive a satisfactory score on the exam that was to be given at the Seminar ( A copy of the letter denying Plaintiff eligible for Certification upon is attached as Exhibit 4 and incorporated herein by reference ).

3. On July 24th-25th, 2014, the Plaintiff: 1.) attended the Seminar; and 2.) took the exam but, was informed by the NFLPA of not passing the exam.  The NFLPA denied the Plaintiff's application for certification to be an NFLPA contract advisor.  The NFLPA Letter informed the Plaintiff that at least forty-one (41) correct items was needed to achieve a passing scaled score of 70 (a copy of the 2014 Letter Denying the Plaintiff is attached as Exhibit 2 and incorporated

herein by reference).

4. According to the contract between the Plaintiff and the NFLPA, if the Plaintiff failed the exam in 2014, upon submitting a written request to the NFLPA, the Plaintiff would be allowed to retake the exam at the 2015 Seminar. The language made a part of the contract stated " ...If you do not pass this examination in 2014, to be eligible for the exam at next administration in 2015, you will be required to submit a written request to the NFLPA to retake the exam...."(a copy of the 2014 Source Document is attached as Exhibit  4 and incorporated herein by reference).

5. Per the above instructions the Plaintiff submitted a written request to the NFLPA to retake the exam. Upon submitting the written request, the Plaintiff received a response from an NFLPA representative via email asking the Plaintiff to sign and have notarized an "Acknowledgement" statement. The "Acknowledgement" statement said, "I, Henry Searcy, Jr.... first duly sworn, say that I have read the foregoing questions and have personally answered the same....Further, I agree to be bound by these Regulations in their entirety." Moreover, the "Acknowledgement" was transmitted to the Plaintiff via email and the subject of said email was titled "NFLPA EXAM RE-test" (a copy of the NFLPA EXAM RE-test is attached as Exhibit A and incorporated herein by reference). On or around June 3, 2015, the Plaintiff received the 2015 Source Document from the NFLPA. Upon the Plaintiff's review of the 2015 Source Document compared to the 2014 Source Document, the Plaintiff noticed that the Test Specifications were the same for the 2014 exam as were for the 2015 exam. The Plaintiff also recognized that the 2015 Source Document and the 2014 Source Document required a Scaled Score of at least 70 in order for one to be certified as a contract advisor. *At all times hereto the Plaintiff believed to be*

*retaking the exam (to include the same scoring methodology) because of the above* (a copy of the 2014 and 2015 Source Documents are attached as Exhibit **B** Exhibit **C, respectively** incorporated herein by reference).

6.  On or around September 20, 2015, the Plaintiff was informed by the NFLPA of not passing the exam. The NFLPA denied the Plaintiff's application for certification to be a NFLPA contract advisor in 2015 and informed the Plaintiff that at least forty-seven (47) correct items were needed to achieve a passing scaled score of 70 (A copy of the letter denying the Plaintiff application for certification is attached as Exhibit **7** and incorporated herein by reference).

7.  Upon receiving the results of the 2015 exam and comparing it to the 2014 exam results, the Plaintiff noticed that the 2014 exam raw score/scale score and the 2015 exam raw score/scale was extremely incongruent from 2014 to 2015, and this noticeable incongruency appeared to the Plaintiff as **suspicious**. Therefore, the Plaintiff filed an appeal on October 21, 2015, contesting the denied certification by the NFLPA.  The appeal stated in summary that: 1.) the "exam scoring process" used by the NFLPA was an arbitrary process which redefined "passing" by utilizing an arbitrary scoring methodology, an action that affects those retaking the exam; 2.) the scoring methodology is not made a part of the NFLPA Regulations in order to completely define "passing" (prior to calculating the scaled score) such actions by the NFLPA does not provide test takers enough information to determine if the calculation of the raw scale was developed correctly, an action that affects those retaking the exam; and 3.) the "exam scoring process" used by the NFLPA arbitrarily and inconsistently determines the applicant sample size, such actions by the NFLPA create a moving target for those who are taking the Exam for the second time ( a

copy of the appeal letter is attached as Exhibit 1 and incorporated herein by reference). *AT ALL TIMES RELEVANT HERETO, THE PLAINTIFF WAS READY, AND WILLING AND ABLE TO PERFORM UNDER THE TERMS OF THE CONTRACT BETWEEN THE PLAINTIFF AND THE NFLPA.*

8.  The Plaintiff could request for relevant information from the NFLPA prior to the appeal hearing. The Plaintiff submitted three requests to the NFLPA for information relevant to the Plaintiff's appeal hearing.  The NFLPA provided a response to all questions related to the Plaintiff's relevant information request except question #3 from the December 10, 2015, Information Request.  The question #3 asked, "if the percentage that passed the 2015 exam was less than 70 percent, that the NFLPA provide: 1.) a copy of the resolution passed by the NFLPA related to this decision; 2.) meeting minutes that show that this change was discussed with the NFLPA Contract Advisors Community, the NFL Players, and voted on by the NFL Team Player Representatives; and 3.) provide a copy of the NFLPA Ratified Bylaws.  The NFLPA responded by saying "While the percentage of eligible test takers that passed the exam may be below 70 percent, **there is no way to provide you the documents you requested because they do not exist.**  Moreover, the Plaintiff continued to prepare for the appeal hearing despite the disappointing news that the above requested documents did not exist.  Thus, the Plaintiff used the response from question #7 in order to establish the premise while preparing for the appeal hearing.  The question #7 asked the NFLPA "Are there any regulations, amendments, or promulgated policies that specifically clarify "pass a written exam within Section 2(A) of the NFLPA regulations?  If so, please provide the section of the NFLPA contract advisor regulations, any amendments to said regulations or any promulgated official

policies/memorandum that clarify "passing a written exam". The NFLPA in response to question #7 said, "Yes, the state policy of the NFLPA is included in the Source Material previously provided to you for your reference. There, on the first page in the collection of documents, the NFLPA states that "applicants must receive a scaled score of at least 70 on the examination to become certified by the NFLPA. If you do not receive the required score to pass the exam, you will be denied certification." Section 3(A)(18) of the Regulations requires compliance with all of the state policies of the NFLPA. Furthermore, despite not having the relevant information from question #7, the Plaintiff used the information provided in question #2 to prepare for the appeal hearing. The question #2 asked the NFLPA "For each NFLPA contract advisor exam given for the years 2010, 2011, 2012, 2013, 2014 provide the following:

1. the total number that took the exam for each year;

2. the total number that failed the exam for each year;

3. the total number that passed the exam for each year;

4. the scoring methodology used to determine if one passed or failed the Exam for each year; and

5. the changes to the scoring methodology made from year to year and the basis/rationale for the change.

The NFLPA provided the Plaintiff a response to sub-questions 1. – 4. above. The NFLPA's response was indicated in a table titled NFLPA 2010-2015 History of Pass Rate Summary Table. The scoring methodology changes were as follows:

| Year | Determination of Cut Score Method |
|------|-----------------------------------|
| 2010 | Standard Setting Study |
| 2012 | Standard Setting Study |

| | |
|---|---|
| 2013 | Equating |
| 2014 | Equating |
| 2015 | Standard Setting Study |

(a copy of the NFLPA 2010-2015 History of Pass Rates Summary Table is attached as Exhibit **5** and incorporated herein by reference) The information provided within the abovementioned table would satisfy the NFLPA's response to question 1. – 4. and be used for by the Plaintiff at the appeal hearing. However, the NFLPA did not provide a response to the Plaintiff's sub-question #5 as this question asked for the rationale for the scoring methodology changes from 2010, 2012, 2013, 2014, and 2015 to no avail. To that end, the Plaintiff received 14 out 18 responses from the NFLPA prior to the Plaintiff's appeal hearing.

9. The appeal hearing was scheduled by the NFLPA, as an NFLPA representative reached out to the Plaintiff to request the dates of availability within the month of February. Upon identifying such dates to the NFLPA representative, on around January 9, 2016, the NFLPA representative informed the Plaintiff via email that the appeal hearing was scheduled for February 19, 2016, at 10:00 AM EST at 1133 20th Street NW Washington, DC. In the same email the Plaintiff was informed that the Arbitrator Jerry Ross would be the arbitrator at the February 19, 2016, appeal hearing (a copy of the NFLPA appeal hearing scheduling email is attached as Exhibit **D** and incorporated herein by reference). On February 17, 2016, the Plaintiff was carbon copied on a direct email sent by the NFLPA representative Joe Briggs to Arbitrator Jerry Ross (Arbitrator). The direct email to the Arbitrator from the NFLPA representative informed the Arbitrator of the "files" that would be introduced at the appeal hearing on February 19, 2016. The direct email to the Arbitrator from the NFLPA representative Joe Briggs also informed the Plaintiff to submit the files to the Arbitrator's attention via email

prior to the appeal hearing (a copy of the NFLPA rep email is attached as Exhibit **E** and incorporated herein by reference).  Per the NFLPA representative Joe Brigg's instructions, the Plaintiff submitted all the exhibits that supported the Plaintiffs testimony directly to the Arbitrator (a copy of Plaintiff email directly to the Arbitrator is attached as Exhibit **F** and incorporated herein by reference).

10.  The appeal hearing began sometime after 10 AM est. with an oath and opening testimonies.  The Plaintiff's appeal hearing unlike most arbitration hearings, began by the testimony of the defending party the NFLPA through its representative Joe Briggs.  The NFLPA representative Joe Briggs testified that the Plaintiff's certification should be denied according to Section 3(A)(15) of the NFLPA regulations. The NFLPA representative Joe Briggs provided a detailed argument showing exhibits and documents etc. all related to Section 3(A)(15) of the NFLPA regulation against the Plaintiff.  Now it was the Plaintiff's turn to testify, where first the Plaintiff informed the NFLPA representative that the argument provided by the NFLPA representative Joe Briggs was not relevant to the Plaintiff as Section 3(A)(15) related to contract advisors - the Plaintiff was an Applicant. Upon negating the NFLPA representative's argument, the Plaintiff provided an additional argument that confirmed to the initial premise provided in the October 21, 2015, appeal letter. The Plaintiff testified that the "Application for Certification as a Contract Advisor" should have not been denied because: 1.) the NFLPA violated their regulations by arbitrarily changing the scoring methodology on the 2015 exam without amending their regulations such actions are an overt violation of Section 1(c) of the NFLPA regulations and breaches the contract between the Plaintiff and the NFLPA; 2.) pursuant to the contract, the Plaintiff was "retaking" the exam and the new scoring methodology should not have been administered on the Plaintiff's 2015 exam

without amending the NFLPA regulations; and 3.) the Plaintiff testified that he got 46 correct

items on the 2015 exam correct and according to the letter provided by the NFLPA the Plaintiff

was required to get 41 correct items in order to pass. *AT ALL TIMES HEREIN, THE*

*PLAINTIFF CLEARLY UNDERSTOOD THAT THE APPEAL HEARING WAS BEING*

*CONDUCTED BY THE AMERICAN ARBITRATION ASSOCIATION (AAA) ACCORDING TO*

*THE VOLUNTARY LABOR ARBITRATOR RULES AS REQUIRED BY SECTION 5(E) OF THE*

*NFLPA REGULATIONS.*

11.  In the month of April 2016, the Plaintiff received a copy of the Arbitrator's Opinion and

Award Document (OAD) denying the Plaintiff's appeal.  The Plaintiff, upon reviewing the

Arbitrator's OAD saw that: a.) the OAD overtly violated the NFLPA regulations; b.) the

Arbitrator's basis used for denial was contrary to the facts; c.) the Arbitrator's OAD identifies

incongruences in the testified statements of the NFLPA representative Joe Briggs and the

information provided the Plaintiff by the NFLPA; d.) the OAD identified third party participation

to the contract between the Plaintiff and the NFLPA.

    **a.**  The overt violations of the NFLPA regulations as identified within the Arbitrator's OAD

        were: 1.) The Arbitrator violated Section 5(E) of the NFLPA regulations by not rendering

        a decision at the close of the hearing or within thirty (30) days after the hearing; 2.) The

        Arbitrator violated Section 5(H) of the NFLPA regulations by not obtaining permission in

        writing by the Plaintiff and the NFLPA to extend the timeframe to provide the written

        decision related to the Plaintiff's appeal hearing; **The Arbitrator's OAD was dated**

        **April 3, 2016, but received by the Plaintiff well over 30 days after the February 19,**

        **2016, hearing date;** and 3.) The Arbitrator's OAD wrongly references Section 3(A)(15)

as the regulatory reference for denial of the Plaintiff's application for certification.  The

Section 3(A)(15) is relevant to contract advisors - the Plaintiff was an Applicant and not a

party to the NFL Collective Bargaining Agreement (CBA);

b.  The Arbitrator's basis used within the OAD to deny the Plaintiff's application for

certification was contrary to the facts provided to the Arbitrator through the

preponderance of the evidence and the relevant information provided to the Plaintiff by

the NFLPA: 1.) **The Arbitrator provided a basis for the Plaintiff's denial contrary to**

**fact by stating that the word "retake" was not mentioned within the NFLPA Source**

**Document.**  The Plaintiff, submitted to the Arbitrator on February 18, 2016, a direct

email that provided the reference pages within the NFLPA Source Document that

identified the word "retake" which is located on the second page of the 2014 NFLPA

Source Document (a copy of the 2014 Source Documents is attached as Exhibit B and

incorporated herein by reference).  On page 5 of the Arbitrator's OAD the Arbitrator

states, "Therefore, the Regulations, such as they are, cannot be enforced. Nor can the

Source Documents which do not mention "retakers" and the term needs to be defined";

On page 5 of the Arbitrator's OAD, the Arbitrator admits to reviewing the Source

Documents and not seeing within said documents the word "retake", such oversight has

served as the basis for the denial of Plaintiff's appeal however, on the contrary the word

"retake" was within the 2014 Source Documents; 2.) **The Arbitrator provided a basis**

**for the Plaintiff's denial contrary to the relevant information submitted to the**

**Plaintiff by the NFLPA when the Arbitrator says that the word "retake" is**

**overridden by the regulations because it was not mentioned in the NFLPA Source**

**Document**.  On the other hand, the NFLPA provided Plaintiff relevant information that stated Section 2(A) of the NFLPA regulations was promulgated within the 2014 Source Documents.  On page 6 and 7 the Arbitrator's OAD states: "Finally, I find unconvincing Mr. Searcy's contention that most of the when items are in a regulation, they are promulgated into policies and procedures. It observes that the initial discussion starts in the regulations and then they are promulgated even further. It points out that in this situation the word "retake" is there, but it is nowhere in the Regulations.  However, I find in the instant case, the term "retake" is overridden by the Regulations which state: "In the instance that a new applicant fails the written examination on two successive occasions, the applicant shall be barred from applying for certification and taking the written examination again for no less than five (5) years."(a copy of the relevant document as mentioned above is attached as Exhibit    and incorporated herein by reference); 3.) **The Arbitrator's OAD misrepresented the Plaintiff's statements throughout the OAD and failed to discuss the Plaintiff's primary points within the hearing**.  On page 6 the Arbitrator's OAD states that "….Mr. Searcy did not understand the scaled score system in asserting that he had scored 76.66 percent of the exam questions…." The Plaintiff's knowledge of the different scoring methodologies is a moot point however, what was important was the fact that the scoring methodologies arbitrarily changed without an amendment to the NFLPA regulations; and the Arbitrator's OAD reveals this fact as the OAD recognizes the scoring methodology change from Equating, Standard Setting, and the Angoff according to the testimony by the NFL representative Joe Briggs.  Moreover, the Arbitrator's OAD supports the Plaintiff's October 21, 2015, appeal letter as scoring methodology was arbitrarily change (A copy of the Plaintiff's Testimony is attached as

Exhibit I and incorporated herein by reference).

*THE STATEMENTS BY THE ARBITRATOR THAT THE WORD "RETAKE" WAS NOT IN THE 2014 SOURCE DOCUMENT CONSTITUTES AN ASSERTION OF A FALSE REPRESENTATION OF A MATERIAL FACT. THE STATEMENTS BY THE ARBITRATOR THAT THE WORD "RETAKE" WAS OVERRIDDEN BY THE REGULATIONS IS ALSO A FALSE REPRESENTATION OF A MATERIAL FACT.*

c.  The Arbitrator's OAD revealed incongruence's in the testified statements of the NFLPA representative Joe Briggs compared to the information provided the Plaintiff by the NFLPA. The incongruent statements were: 1.) On page 4 of the Arbitrator's OAD the NFLPA representative Joe Briggs testified that "In 2015 a new substance abuse policy was considered in the exam and not used in 2014." This statement contradicts the information provided to the Plaintiff by the NFLPA. The information provided to the Plaintiff within the Test Specification Table inside the 2014 Source Documents on page 3 located at <u>III NFL Policies and Procedures (A)(1) Substance Abuse Polices</u> **indicate that the substance abuse policy was a part of the 2014 NFLPA contract advisor exam.** 2.) The Arbitrator's OAD offers additional testimony of the NFLPA representative Joe Briggs that was contrary to the information provided to the Plaintiff by the NFLPA. On page 4 of the Arbitrator's OAD the NFLPA representative Joe Briggs when commenting about the 2015 exam mentions" The Angoff Cut-Score was used" while the NFLPA provided information to the Plaintiff that stated that the Equating cut-score was used for the 2014 exam and the Standard Setting Study cut-score was used for the 2015 exam. *THE NFLPA MISREPRESENTED THE ACCURACY OF THE SCORING*

*METHODOLOGY IN ORDER TO DECIEVE THE PLAINTIFF PRIOR TO THE*
*APPEAL HEARING AS THE NFLPA NEW THAT THE PLAINTIFF WOULD RELY*
*UPON THESE REPRESENTATIONS.*

d. The Arbitrator's OAD named third party interference to the contract between the Plaintiff and the NFLPA where on page 3 it states, "It observes that a professional testing service ProMetric LLC, helped determine the standard for minimum competence. Ten subject matter experts were used to develop the 60 multiple choice questions which comprised the exam." The relevant documents provided by the NFLPA to the Plaintiff found that the NFLPA regulations Section 2(A) related to "pass a written exam" was promulgated in the Source Document. Upon the Plaintiff's review of the 2014 Source Document and the 2015 Source Document the Plaintiff does not see any amendments discerning changing the scoring methodology to determine minimum competence according to Section 1(c) of the NFLPA regulations and the contract between the Plaintiff and NFLPA. The 2014 Source Documents has three amendments, the amendments are: 1.) Time Limit to Dispute a Failing Grade on the Contract Advisor Test; 2.) Amend the Application for Certification as a Contract Advisor to Require Applicants to List Liens 3.) Minimum accreditation for a College or university. The 2015 Source Document has three amendments plus the 2014 amendments they are: 1.) Increase in Discipline; 2.) Submission of Other Agreements under Section 2(A) )6) 3.) Referring Player-Clients to Outside Counsel on CBA Issues plus the above mentioned 1.), 2.), and 3.). That said, neither the 2014 Source Document nor the 2015 Source Document mentions a change to the scoring methodology by ProMetric, LLC (a copy of

the Arbitrator's OAD is attached as Exhibit **G** and incorporated herein by reference)

*WITHOUT LEGAL JUSTIFICATION PROMETRIC LLC WHO KNEW THAT APPLICANTS TO BECOME CERTIFIED CONTRACT ADVISORS WERE UNDER*
*CONTRACT WITH THE NFLPA INTENTIONALLY BREACHED THE CONTRACT BETWEEN THE PLAINTIFF AND THE NFLPA TO BENEFIT ITS OWN BUSINESS  BY INTENTIONALLY CHANGING THE SCORING METHODOLOGY WITHOUT AMENDING THE REGULATIONS PER 1(C) OF THE NFLPA REGULATIONS A BREACH OF THE CONTRACT BETWEEN THE PLAINTIFF AND THE NFLPA.*

12. On April 25, 2016, the Plaintiff wrote a letter to the NFLPA Executive DeMaurice Smith, Executive Director of the National Football League Players Association and Mark Levin, Director of Salary Cap and Agent Administration for the NFLPA, requesting a default ruling as relief for having to participate in an unfair appeal process. The letter was written because the NFLPA regulations do not comment on the repercussions of an Arbitrator violating the NFLPA regulations.  The letter also mentioned that the regulations are silent as it relates to the repercussions if the NFLPA violated its regulations within the appeal and hearing process (a copy of the Default Ruling letter is attached as Exhibit M and incorporated herein by reference). After waiting several weeks for a response from DeMaurice Smith or Mark Levine regarding the April 25, 2016, default ruling letter, in the month of June, the Plaintiff contacted the AAA and spoke to an AAA representative who asked the Plaintiff to provide the case number relevant to the Arbitration hearing.  Upon providing the case number made a part of the Arbitrator's OAD,

NFLPA-DC-O5, the AAA representative said that the case number made a part of the Arbitrator's OAD was not an AAA case number (a copy of the AAA email is attached as Exhibit and incorporated herein by reference). According to Section 5(E) of the NFLPA regulations, the Arbitrator is to conduct the hearing according to the "Voluntary Labor Union Rules (VLUR)". The Plaintiff was told by the AAA representative that the case number provided was not an AAA case numbers. The AAA representative further stated that all AAA case numbers were twelve (12) twelve-digit numberss. Moreover, the AAA representative also informed the Plaintiff that the VLAR were not made a part of the AAA active rules or archived rules. An AAA representative said that an organization could pay for the use of the AAA rules. The Plaintiff was disturbed to hear the news. Such news meant, that the February 19, 2016, appeal hearing was not conducted according to the VLAR. Accordingly, the Plaintiff was further disturbed because according to Section 5(E) of the NFLPA regulations, the hearing must be transcribed. The Plaintiff relied on the fact that the hearing was governed by the AAA for the review and sign off of the hearing transcription. Accordingly, through out the Arbitrator's OAD, the Plaintiff's words were taken out of context thus, to date, the Plaintiff has not reviewed or signed off on the transcription from the February 19, 2016, appeal hearing. The Plaintiff concluded from the information provided by the AAA that the Arbitrator did not have any oversight other than from the organization that was paying his $5,028.60 invoice, the NFLPA.

*AT ALL TIMES HEREIN, PLAINTIFF RELIED UPON THE GOVERNING OF THE AAA BEING A PART OF THE HEARING PROCESS THUS PROVIDING THE CONFIDENCE THAT ONE WOOULD RECEIVE A FAIR ARBITRATION. (a copy of the AAA not a Case # email is attached as Exhibit H and incorporated herein for reference)*

13. The NFLPA had a duty of care to the Plaintiff. This duty of care required: 1.) the NFLPA to amend the NFLPA Regulations upon changing the scoring methodology from the scoring methodology used in the 2014 exam to the scoring methodology used in the 2015 exam; 2.) the NFLPA to transmit accurate information (including organizational information ( e.g. the NFLPA ratified bylaws) from the NFLPA to the Plaintiff during the request for relevant documents during the appeal and hearing process; 3.) the performance of the contract between the Plaintiff and the NFLPA to allow test takers who failed the exam the opportunity to retake the exam per the contract; 4.) for the oversight of the hearing to be conducted in compliance with the VLAR of the AAA; 5.) for the oversight of their hired contractor, Prometric, to not interfere with the existing contract of the Plaintiff and other Applicants or contract advisors; and  6.) for the oversight of the Arbitrator, to not violate the NFLPA regulations.

14. The Plaintiff was a former participant in the 1994 Rose Bowl who instead of pursuing a career in the National Football League has been a community advocate of affordable housing for very-low to moderate income persons, the elderly and persons with disabilities. The Plaintiff was mentored by former Oakland Raiders Mr. Otis Sistrunk and the late Michael Wynn on the legacy of the NFLPA and the benefits of a college education.  They both played with the late Gene Upshaw and were associated with an NFLPA organization steep in rich historical traditions an organization that was dedicated to compelling social purpose.  The Plaintiff's desire to be a member of the NFLPA was more than an opportunity to negotiate contracts for NFL Players, but an opportunity to share in that legacy created by the Plaintiff's mentors.  Upon participating in an application process that includes an appeal and hearing process that was corrupt, fraudulent, and unlawful, the Plaintiff was diagnosed as having been suffering from induced depression during

the later part of 2016. Furthermore, the induced depression was diagnosed to be caused by the actions of the NFLPA and the Arbitrator where the Plaintiff has since suffered from medical bills, embarrassment, loss of society, and loss of economic advantage and potential financial opportunities as a result of being wrongfully denied certification to be a contract advisor.  The Plaintiff has been prescribed escitalopram by a licensed psychiatrist to treat the symptoms of depression.

<u>COUNT  I  -  Breach  of  Contract</u>

15.  Plaintiff adopts by reference the allegations contained in paragraphs 1 through 14 of this Complaint with the same effect as if herein fully set forth.

16. That the NFLPA breached the contract with the Plaintiff by changing the scoring methodology of the exam without amending its regulations contrary to Section 1(C) of the NFLPA regulations.

17. That the NFLPA breached the contract with the Plaintiff by not conducting the Plaintiff's hearing according to the "Voluntary Labor Arbitration Rules" of the AAA according to Section 5(E) of the NFLPA regulations.

18. That the NFLPA breached the contract with the Plaintiff when the Arbitrator did not render a decision at the close of the hearing or within thirty (30) days after the hearing a violation of Section 5(E) of the NFLPA regulations.

19. That the NFLPA breached the contract with the Plaintiff when the Arbitrator extended the timeframe to provide a written decision without written agreement from the Plaintiff,  a violation of Section 5(H) of the NFLPA regulations.

20. That the NFLPA breached the contract with the Plaintiff by paying $5,028.60 to the Arbitrator for conducting a hearing that was not governed by the VLAR of the AAA.

21. As a result of the Defendant's breach of contract the Plaintiff has suffered lost profit damages not from the contract that was broken, but from the loss of other contracts collateral to the one broken by the NFLPA, contacts to which the defendant was not a party. The estimated cost related to loss profits including pro-forma market projections of post contract breach data can be found in the 2014 or 2015 Source Document within the Signals Section.

WHEREFORE, Plaintiff demands judgement against the NFLPA for damages in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and cost.

## COUNT  II  -  TORTIOUS INTERFERANCE WITH CONTRACTUAL RELATIONS

22.  That the Plaintiff incorporates Paragraphs 1 – 21 herein by reference.

23.  That ProMetric breached the contract between the Plaintiff and the NFLPA by changing the scoring methodology on the 2015 contract advisor exam without amending the NFLPA regulations.

24.  That the NFLPA hired/procured ProMetric to change the scoring methodology on the 2015

contract advisor exam and did not amend the NFLPA regulations.


25.  As a result of ProMetric's intentional procurement to breach the contract between the

Plaintiff and the NFLPA, the Plaintiff has suffered lost profit damages not from the contract that

was broken, but from the loss of other contracts collateral to the one broken by the NFLPA,

contacts to which the defendant was not a party. The estimated cost related to loss profits

including a pro-forma market projections post contract breach data can be found in the 2014 or

2015 Source Document within the Signals Section.


WHEREFORE, Plaintiff demands judgement against ProMetric for damages in excess of

Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest

and cost, exclusive of interest and cost.


## COUNT  III  -  SPECIFIC  PERFORMANCE


26.  That the Plaintiff incorporates Paragraphs 1 - 25 herein by reference.

27.  That the NFLPA is arbitrarily changing the scoring methodology while keeping the scaled

score the same without amending regulation or promulgating the regulations into the Source

Document contrary to Section 1(C) of the NFLPA regulations.   Moreover, the NFLPA is

changing the scoring methodology while keeping the scale score constant without providing

contract advisors and Applicants a copy of resolutions minutes that include the rationale for such

contract advisors and Applicants a copy of resolutions minutes that include the rationale for such actions; resolutions and minutes that show that the changes were discussed with the NFLPA Contract Advisors Community and voted on by the NFL Team Player Representatives similar to (Exhibit J) as required by Section 1(C) of the NFLPA regulations. The Plaintiff is wanting the Judge to mandate the NFLPA to comply with their regulations as such actions threatens the livelihood of contract advisors and Applicants.

28. That the NFLPA promulgated the NFLPA regulation Section 2(A) into policy within the Source Document but will not honor the promulgated policy while recognizing other promulgated policy within the same Source Document.  Thus, the Plaintiff is asking the Judge to make the NFLPA to honor the "retake the exam" policy within the Source Document.

29. As a result of the NFLPA's disregard to their regulations and policies the Plaintiff has suffered lost profit damages not from the contract that was broken, but from the loss of other contracts collateral to the one broken by the NFLPA, contacts to which the defendant was not a party. The estimated cost related to loss profits including a pro-forma market projections post contract breach data can be found in the 2014 or 2015 Source Document within the Signals Section.

WHEREFORE, the Plaintiff demands judgement against the NFLPA for damages in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and cost.

## COUNT IV - NEGLIGENT MISREPRESENTATION

30. That the Plaintiff incorporates Paragraphs 1 - 29 herein by reference.

31. That within the duty to exercise reasonable care, the Arbitrator misinterpreted the facts on page 3 of the Arbitrator's OAD, the Arbitrator references Section 3(A)(15) of the NFLPA regulations as the basis for the Plaintiffs appeal denial. However, Section 3(A)(15) of the NFLPA regulations relate to persons that are party to the NFL Collective Bargaining Agreement (CBA) or certified contract advisors not Applicants.

32. That within the duty to exercise reasonable care, the Arbitrator made a false statement within the Arbitrator's OAD when the Arbitrator said that the word "retake" was not in the Source Documents.

33. That within the duty to exercise reasonable care, the Arbitrator misrepresented the fact by saying that the term "retake" is overridden by the NFLPA regulations contrary to the information provided to his attention from the NFLPA that stated that the regulations were promulgated in the Source Document.

34. That within the duty to exercise reasonable care, the Arbitrator, other than did not conduct the Plaintiff's appeal hearing according to the Voluntary Labor Arbitration Rules of the AAA.

35. That within the duty to exercise reasonable care, the NFLPA misrepresented the fact that the

hearing would be conducted using the "Voluntary Labor Arbitration Rules" of the AAA when no such rules are a part of the active or archived rules of the AAA.

36. That within the duty to exercise reasonable care, the NFLPA paid the Arbitrator $5,028.60 to conduct an arbitration hearing using arbitration rules not governed by the AAA.

37. That within the duty to exercise reasonable care, the NFLPA provided false information to the Plaintiff prior to the hearing related to the methodology used on the Plaintiff's exam where on page 4 of the Arbitrator's OAD the NFLPA representative Joe Briggs states that the Angoff methodology was used as the cut score this statement was contrary to the relevant information received by the Plaintiff from the NFLPA that said the Standard Setting Study cut-score was used on the 2015 exam.

38. That within the duty to exercise reasonable care, the NFLPA representative Joe Briggs testified that the 2015 exam was different than the 2014 exam a statement that was contrary to the relevant information provided the Plaintiff by the NFLPA.

39. That within the duty to exercise reasonable care, the NFLPA provided a misleading statement to the Plaintiff during the Plaintiff's request for relevant information that the NFLPA ratified bylaws do not exist contrary to the rules of a nonprofit organization.  The Plaintiff finds it hard to believe that an organization that has been organized since 1956 does not have bylaws or ratified bylaws.

40.  As a result of the NFLPA's lack of duty of care and misrepresentative actions, the Plaintiff

has suffered lost profit damages not from the contract that was broken, but from the loss of other

contracts collateral to the one broken by the NFLPA, contacts to which the defendant was not a

party. The estimated cost related to loss profits including a pro-forma market projections post

contract breach data can be found in the 2014 or 2015 Source Document within the Signals

Section.

WHEREFORE, Plaintiff demands judgement against the NFLPA for damages in excess of

Seventy-Five Thousand Dollars ($75,000), exclusive of interest and cost.


## COUNT V - NEGLIGENCE


41.  Plaintiff adopts by reference the allegations contained in paragraphs 1 through 40 of this

Complaint with the same effect as if herein fully set forth.


42. That the NFLPA breached the contract with the Plaintiff by changing the scoring

methodology of the exam without amending its regulations an overt violation of Section 1(c) of

the NFLPA regulations.


43. That the NFLPA breached the contract with the Plaintiff by misrepresenting that the hearing

would be conducted according to the VLAR of the AAA where according to the AAA the VLAR

are not a part of their active or archived rules, an overt violation of Section (5E) of the NFLPA

regulations.

44.  That the NFLPA breached the contract with the Plaintiff when the Arbitrator did not render a decision at the close of the hearing or within thirty (30) days after the hearing a violation of Section 5(E) of the NFLPA regulations.

45. That the NFLPA breached the contract with the Plaintiff when the Arbitrator extended the timeframe to provide a written decision related to the Plaintiff's appeal and hearing without receiving a written decision from the Plaintiff according to Section 5(H) of the NFLPA regulations.

46. That the NFLPA breach the contract with the Plaintiff by paying $5,028.60 to the Arbitrator for conducting a hearing that was not governed by the AAA.

47. As a result of the Defendant's breach of contract, the Plaintiff has suffered lost profit damages not from the contract that was broken, but from the loss of other contracts collateral to the one broken by the NFLPA, contacts to which the defendant was not a party. The estimated cost related to loss profits including a pro-forma market projections post contract breach data can be found in the 2014 or 2015 Source Document within the Signals Section.

WHEREFORE, Plaintiff demands judgment against the NFLPA for damages in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and cost.

## COUNT VI - VIOLATION OF THE FEDERAL ARBITRATION ACT

48.  Plaintiff adopts by reference the allegations contained in paragraphs 1 through 47 of this Complaint with the same effect as if herein fully set forth.

49. That the Arbitrator provided a basis for denial contrary to fact related to several items within the Arbitrator's OAD as stated in 11(b) above- such partial/biased actions has prejudiced the Plaintiff;

50. That the Arbitrator's award was procured through partiality upon providing a denial for certification of the Plaintiff's application referencing Section 3(A)(15) – a Section in the NFLPA regulations that pertains to certified contract advisors – the Plaintiff was an Applicant.

51.  That the Arbitrator procured the award through partiality by overtly breaching the contract between the Plaintiff and the NFLPA by not rendering a decision at the close of the hearing or within thirty (30) days after the hearing according to Section 5(E) of the NFLPA regulations such actions that prejudices the rights of the Plaintiff.

52.  That the Arbitrator procured the award through dishonesty as the Arbitrator was to be paid by the NFLPA $5,028.60 to conduct a hearing according to the "VLAR" according to section 5(G) to conduct a hearing according to the "VLAR" of the AAA only to discover that the Plaintiff's case NFLPA-DC-05 was not in the AAA system.

53.  That the Arbitrator procured the award through deception as the Arbitrator was to conduct the hearing according to the "VLAR" of the AAA according to Section 5(E) of the NFLPA regulations and according to the AAA the "VLAR" does not exist.

54.  As a result of the Arbitrator's partiality, the Plaintiff is seeking vacatur of the Plaintiff's denial of certification according to Section 10(a) of the Federal Arbitration Act and certification by the NFLPA as a contract advisor.

## COUNT VII PUNITIVE DAMAGE

55.  That the Plaintiff incorporates Paragraphs 1 – 54 herein by reference.

56.  That the acts of the NFLPA, herein were performed with actual malice and/or reckless indifference to the rights of the Plaintiff.

57. That the acts of the NFLPA cannot be tolerated in a civilized society and merit the punishment of the NFLPA which will thereby discourage others from similar actions.

WHEREFORE, Plaintiff demands judgement against NFLPA for damages in excess of Seventy-

Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and cost,

exclusive of interest and cost.

RESPECTFULLY SUBMITTED,

HENRY SEARCY, JR., PRO SE

12804 Willow Marsh Lane

Bowie, Maryland 20720