**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HENRY SEARCY, JR., )<br><br>Plaintiff, )<br><br>v. )<br><br>DEMAURICE F. SMITH, et al., )<br><br>Defendants. ) | Civil Action No. 19-921 (RBW) |

## MEMORANDUM OPINION

The pro se plaintiff, Henry Searcy, Jr., brings this civil action against the National

Football League Players Association ("NFLPA"); DeMaurice F. Smith, the Executive Director

of the NFLPA; Prometric LLC ("Prometric"); and Michael P. Sawicki, the Vice President and

General Counsel of Prometric (collectively, the "defendants"), alleging violations of the Federal

Arbitration Act (the "Act"), 9 U.S.C. §§ 1–307 (2018), and District of Columbia common law.

See Amended Complaint ("Am. Compl.") ¶¶ 15–59. Currently pending before the Court are (1)

Defendant National Football League Players Association's Motion to Dismiss ("NFLPA's

Mot."), (2) Defendant DeMaurice F. Smith's Motion to Dismiss Plaintiff's First Amended

Complaint ("Smith's Mot."), (3) Defendant Prometric LLC's Motion to Dismiss Plaintiff's

Amended Complaint ("Prometric's Mot."), and (4) Defendant Michael P. Sawicki's Motion to

Dismiss Plaintiff's Amended Complaint ("Sawicki's Mot."), all of which are opposed by the

plaintiff. Upon careful consideration of the parties' submissions,[1] the Court concludes for the

---

[1] In addition to the filings already identified, other than the plaintiff's oppositions, the Court considered the
following submissions in rendering its decision: (1) the Complaint ("Compl."); (2) the Declaration of Michael P.
Sawicki ("Sawicki Decl."); (3) the Declaration of Heather McPhee ("McPhee Decl."); (4) the Memorandum in

(continued . . .)

following reasons that it must grant the NFLPA and Smith's motions to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6), and that it must grant Prometric and Sawicki's motions

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I.    BACKGROUND

The following facts are taken from the Amended Complaint, unless otherwise specified.

Under Section 9(a) of the National Labor Relations Act ("NLRA"), the NFLPA "is the exclusive

collective bargaining representative of all present and future [National Football League ('NFL')]

players." NFLPA's Mem. at 2.  Smith, as noted earlier, is the Executive Director of the NFLPA.

See Smith's Mem. at 1.

The NFLPA "delegate[s] portions of its exclusive bargaining authority to Contract

Advisors for purposes of negotiating individual player contracts with NFL Clubs[.]" NFLPA's

Mem. at 2–3.  In order to negotiate player contracts with NFL organizations, Contract Advisors

must meet the requirements for certification set forth in regulations promulgated by the

---

(. . . continued)
Support of Defendant Michael P. Sawicki's Motion to Dismiss Plaintiff's Amended Complaint ("Sawicki's Mem.");
(5) the Statement of Points and Authorities in Support of Defendant DeMaurice F. Smith's Motion to Dismiss
Plaintiff's First Amended Complaint ("Smith's Mem."); (6) Plaintiff Henry Searcy, Jr.'s Opposition to [Sawicki's]
Motion to Dismiss ("Pl.'s Opp'n to Sawicki's Mot."); (7) Plaintiff Henry Searcy, Jr.'s Opposition to [Smith's]
Motion to Dismiss ("Pl.'s Opp'n to Smith's Mot."); (8) the Memorandum in Reply to Plaintiff's Opposition to
Defendant Michael P. Sawicki's Motion to Dismiss ("Sawicki's Reply"); (9) the Statement of Points and Authorities
in Further Support of Defendant DeMaurice F. Smith's Motion to Dismiss Plaintiff's First Amended Complaint
("Smith's Reply"); (10) the Memorandum in Support of Defendant Prometric LLC's Motion to Dismiss Plaintiff's
Amended Complaint ("Prometric's Mem."); (11) the Statement of Points and Authorities in Support of Defendant
National Football League Players Association's Motion to Dismiss ("NFLPA's Mem."); (12) [Sawicki's] Line
Partially Withdrawing Motion to Dismiss Argument for Insufficient Service of Process ("Sawicki's Supp.");
(13) Plaintiff Henry Searcy, Jr.'s Opposition to [NFLPA's] Motion to Dismiss ("Pl.'s Opp'n to NFLPA's Mot.");
(14) the National Football League Players Association's Reply Memorandum in Further Support of its Motion to
Dismiss ("NFLPA's Reply"); (15) Plaintiff Henry Searcy, Jr.'s [Second] Opposition to [NFLPA's] Motion to
Dismiss ("Pl.'s 2d Opp'n to NFLPA's Mot."); (16) Plaintiff Henry Searcy, Jr.'s Opposition to [Prometric's] Motion
to Dismiss ("Pl.'s Opp'n to Prometric's Mot."); (17) Plaintiff Henry Searcy, Jr.'s [Second] Opposition to
[Sawicki's] Motion to Dismiss ("Pl.'s 2d Opp'n to Sawicki's Mot."); (18) Defendant DeMaurice F. Smith's Notice
of Response to Plaintiff's Second Opposition to Motion to Dismiss ("Smith's Resp. to Pl.'s 2d Opp'n to NFLPA's
Mot."); (19) Defendant Michael P. Sawicki's [Second] Reply in Support of His Motion to Dismiss Plaintiff's
Amended Complaint ("Sawicki's 2d Reply"); and (20) Defendant Prometric LLC's Reply in Support of Its Motion
to Dismiss Plaintiff's Amended Complaint ("Prometric's Reply").

NFLPA—the NFLPA Regulations Governing Contract Advisors (the "Agent Regulations")— and otherwise comply with these regulations. Id. Pursuant to the Agent Regulations, in order to be eligible for certification, a prospective NFLPA Contract Advisor "must file a verified Application for Certification," as well as "attend[] the NFLPA seminar for new Contract Advisors" and "pass[] a written examination." Id. at 4 (internal quotation marks omitted) (quoting Am. Compl., Exhibit ("Ex.") 3 (Agent Regulations) at § 2(A), at 13–14).[2]

In 2014, the plaintiff, a resident of Maryland, see Am. Compl. at 1, completed an application for certification as a NFLPA Contract Advisor, see Am. Compl. ¶ 2. In a letter dated June 12, 2014, the plaintiff was informed by NFLPA that he was deemed eligible for certification, subject to him (1) attending an NFLPA Contract Advisor Seminar and (2) receiving a satisfactory score on the NFLPA Contract Advisor examination (the "examination"), which would be given at the seminar. See id. The letter explained that the examination "would consist of [sixty] multiple-choice questions," and that "[a]pplicants must receive a scaled score of at least [seventy] on the examination to become certified by the NFLPA." NFLPA's Mem. at 5 (emphasis in original) (internal quotations omitted) (quoting Am. Compl., Ex. B (Letter from the NFLPA to Applicants (June 12, 2014)) at 3–4); see Am Compl. ¶ 3. The NFLPA Contract Advisor examination is developed and provided by Prometric, see Prometric's Mem. at 1, a company based in Maryland, see Sawicki Decl. ¶ 5. Sawicki, as noted earlier, is the Vice President and General Counsel of Prometric, see Sawicki's Mem. at 4, and a resident of Maryland, see Sawicki Decl. ¶ 4.

---

[2] Because the plaintiff did not insert page numbers on several filings he submitted in this case, the page numbers cited by the Court when referring to the plaintiff's filings are the automatically generated page numbers assigned to the plaintiff's filings by the Court's ECF system.

In connection with the plaintiff's application for certification, he signed an Acknowledgement Form pursuant to which he "agree[d] to comply with and be bound by the[] [Agent] Regulations," and further "agree[d] that if [he] [is] denied Certification . . . the exclusive method for challenging any such action is through the arbitration procedure set forth in the [Agent] Regulations."  NFLPA's Mem. at 4 (alterations in original) (emphasis in original) (internal quotations omitted) (quoting Am. Compl., Ex. 3 (Agent Regulation, Appendix A) at 29–30).  The Agent Regulations specify that appeal "hearing[s] [are] conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association."  Id. at 5 (alterations in original) (internal quotations omitted) (quoting Am. Compl, Ex. 3 (Agent Regulations) at § 5(E), at 24).

The plaintiff took the examination on July 25, 2014.  See Sawicki's Mem. at 2.  In a letter dated September 8, 2014, the plaintiff was advised by the NFLPA that he did not pass the 2014 examination.  See Am. Compl. ¶ 3; NFLPA's Mem. at 5.  The letter explained that "[a] scaled score of [seventy] or better is considered a passing grade.  The scaled score is NOT a percentage of the total number of questions answered correctly[;] however you needed to answer at least [f]orty-one [ ] correct items to achieve a passing scaled score."  NFLPA's Mem. at 6 (alterations in original) (quoting Am. Compl., Ex. 2 (Letter from the NFLPA to Searcy (Sept. 8, 2014)) at 4); see Am. Compl. ¶ 3.

The plaintiff took the examination a second time on July 24, 2015.  See Am. Compl. ¶¶ 5–6; Sawicki's Mem. at 2.  In a letter dated September 22, 2015, the plaintiff was again advised by the NFLPA that he did not pass the 2015 examination.  See NFLPA's Mem. at 6.  The letter explained that "[a] scaled score of [seventy] or better is considered a passing grade[,]" but that this time, "you needed to answer at least [f]orty-seven [ ] correct items to achieve a

passing scaled score."  Sawicki's Mem. at 2 (alternations in original) (quoting Am. Compl., Ex.

7 (Letter from NFLPA to Searcy (Sept. 22, 2015)) at 55); see Am. Compl. ¶ 6.  Therefore, while

"the passing grade for the 2015 exam[ination] was the same as the 2014 exam[ination]—i.e., a

scaled score of [seventy] or better[,]" "to achieve a scaled score of [seventy] in 2015, an

[a]pplicant was required to obtain a raw score of at least [forty-seven], as opposed to [forty-one]

in 2014."  NFLPA's Mot. at 5–6; see Am. Compl. ¶ 7.

        Following his receipt of the September 25, 2015 letter, the plaintiff filed an appeal with

the NFLPA, asserting that (1) he had answered forty-six correct items on the 2015 examination,

and had thus passed the exam based upon the 2014 "Exam Scoring Process[,]" see Am. Compl.

¶¶ 6–7, and (2) the NFLPA arbitrarily changed the "Exam Scoring Process" to require

forty-seven correct items on the 2015 examination, see id. ¶ 7.  The plaintiff's appeal proceeded

to arbitration and, in a decision dated April 3, 2016, the arbitrator issued a decision upholding the

NFLPA's decision to deny Contract Advisor certification to the plaintiff (the "Arbitration

Award").  See NFLPA's Mem. at 8; Am. Compl. ¶ 11.

        Nearly three years after the Arbitration Award was issued, on April 2, 2019, the plaintiff

filed his Complaint against Smith and Sawicki in this Court.  See Compl. at 1.  Then, on

May 29, 2019, the plaintiff amended his Complaint to include the NFLPA and Prometric as

additional defendants.  See Am. Compl. at 1.  In the Amended Complaint, the plaintiff seeks to

vacate the Arbitration Award pursuant to the Federal Arbitration Act (the "Act")[3] "[a]s a result

---

[3] As explained in Part III.C of this Memorandum Opinion, "the Arbitration Act as a whole does not vest independent
jurisdiction in a [f]ederal [d]istrict [c]ourt."  Bangor & Aroostock R.R.  v. Maine Cent. R.R., 359 F. Supp. 261, 262
(D.D.C. 1973).  The Court must therefore determine whether it "already [has] jurisdiction over the subject matter
through another source such as diversity of citizenship or federal question."  Warren Bros. Co. v. Cmty. Bldg. Corp.
of Atlanta, 386 F. Supp. 656, 659 (M.D.N.C. 1974).  Accordingly, the Court concludes that it has diversity
jurisdiction over the plaintiff's claims against the NFLPA, because the NFLPA is based in the District of Columbia,
see McPhee Decl., Ex. 1 (Service of Process Transmittal) (listing a District of Columbia address for the NFLPA),
while the plaintiff resides in Maryland, see Am. Compl. at 1 (listing a Maryland address for the plaintiff), and the
(continued . . .)

of the [a]rbitrator's partiality"[4] (Count VI).  Id. ¶ 52.  Additionally, the plaintiff asserts the

following District of Columbia common law claims against the NFLPA and Prometric:[5]

(1) breach of contract against the NFLPA (Count I); (2) tortious interference with contractual

relations against Prometric (Count II); (3) negligent misrepresentation against the NFLPA

(Count IV); (4) negligence against the NFLPA (Count V); and (5) intentional infliction of

emotional distress by the NFLPA (Count VII).[6]  See id. ¶¶ 15–59.  The defendants thereafter

filed their motions to dismiss, see generally NFLPA's Mot.; Smith's Mot.; Prometric's Mot.;

Sawicki's Mot., which are the subjects of this Memorandum Opinion.

## II.     STANDARDS OF REVIEW

### A.     Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.

A motion pursuant to this Rule "presents a threshold challenge to the [C]ourt's jurisdiction . . . ."

Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); see Grand Lodge Fraternal Order of

Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (noting that "a Rule 12(b)(1) motion

imposes on the [C]ourt an affirmative obligation to ensure that it is acting within the scope of its

jurisdictional authority").  Accordingly, the Court must dismiss a claim if it "lack[s] . . . subject

---

(. . . continued)
amount in controversy exceeds $75,000, see Am. Compl. at 38 (alleging damages in excess of $75,000).  However, the plaintiff has failed to establish any independent basis for this Court to exercise federal subject matter jurisdiction over his claims against Prometric and Sawicki.  As explained in Part III.C, the plaintiff alleges no basis for either diversity or federal question jurisdiction as to his claims against these defendants.  See discussion infra Part III.C.

[4] The arbitrator is not a party to this action.  See Am. Compl. at 1.

[5] Although the plaintiff has included Smith and Sawicki as defendants, he does not reference them in any "counts" of the Amended Complaint.  Instead, the plaintiff only references Smith and Sawicki briefly in the Amended Complaint, identifying them as "the appropriate person[s] of authority" for the NFLPA and Prometric, respectively. See Am. Compl. ¶ 12.

[6] Although the plaintiff also asserts "counts" for "specific performance" (Count III) and "punitive damages" (Count VIII), both are remedies, not causes of action.

matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and the plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence, see, e.g., Moore v. Bush, 535 F. Supp. 2d 46, 47 (D.D.C. 2008).  In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court is not limited to the allegations set forth in the complaint, but "may consider materials outside the pleadings[.]" Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Because the Court must ensure its jurisdictional authority, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d at 13–14 (alteration in original) (internal quotation marks omitted).

## B.      Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) governs motions to dismiss for failure to state a claim.  A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a plaintiff is entitled to "the benefit of all

inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption. See, e.g., Kowal, 16 F.3d at 1276. Along with the allegations made within the four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   ANALYSIS

The NFLPA and Smith contend that the plaintiff's claims should be dismissed pursuant to Rule 12(b)(6), while Prometric and Sawicki contend that the plaintiff's claims should be dismissed pursuant to Rule 12(b)(1).[7] The Court will separately address each of the defendants' motions.

## A.   The NFLPA's Motion to Dismiss

The NFLPA moves to dismiss the plaintiff's Amended Complaint pursuant to Rule 12(b)(6) on the ground that all of the plaintiff's claims against the NFLPA are barred by the Act.[8] See NFLPA's Mem. at 10. Specifically, the NFLPA argues that the Act bars the

---

[7] Although Smith, Prometric, and Sawicki have also moved to dismiss the plaintiff's Complaint on other grounds, see Smith's Mot. at 1 (seeking dismissal pursuant to Rule 12(b)(2), (5), and (6)); Prometric's Mot. at 1 (seeking dismissal pursuant to Rule 12(b)(1) and (6)); Sawicki's Mot. at 1 (seeking dismissal pursuant to Rule 12(b)(1) and (6)), because Smith's Rule 12(b)(6) arguments and Prometric's and Sawicki's Rule 12(b)(1) arguments are dispositive, see discussion infra Part III.B and Part III.C, the Court need not address the other grounds for dismissal asserted by Smith, Prometric, and Sawicki, and the Court will deny their motions as moot to the extent that they seek dismissal on these other grounds.

[8] The Court notes that the Act governs the Arbitration Award at issue, as the plaintiff signed a contract with the NFLPA—the Acknowledgment Form—which clearly states that the plaintiff is bound to arbitrate any challenges to his denial of certification as a NFLPA Contract Advisor. See Am. Compl., Ex. 3 (Agent Regulation, Appendix A) at 29–30; see also 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Although the plaintiff cites the District of Columbia arbitration statute in his opposition to the NFLPA's motion to dismiss, see Pl.'s Opp'n to NFLPA's Mot. at 36 (citing D.C. Code Ann. § 16-4423), in his Amended Complaint, the plaintiff seeks to vacate the Arbitration Award pursuant to the Act, not the District of Columbia arbitration statute, see Am. Compl. ¶ 52; see also Pl.'s Opp. to NFLPA's Mot. at 36

(continued . . .)

plaintiff's claims because (1) the plaintiff's attempt to vacate the Arbitration Award (the "vacatur claim") is barred by the Act's statute of limitations, and (2) the plaintiff's remaining common law claims against the NFLPA under the Act constitute an impermissible collateral attack on the Arbitration Award.  See id. at 10–11.  The plaintiff responds that his claims are timely because the Arbitration Award "was procured by corruption, fraud, or other undue means[,]" and therefore the statute of limitations did not begin to run until he first learned of the purported misconduct that tainted the Arbitration Award, Pl.'s Opp'n to NFLPA's Mot. at 39, but he fails to respond to the NFLPA's second argument.  The Court will address the NFLPA's two arguments in turn.

1.      **Whether the Plaintiff's Vacatur Claim is Barred by the Act's Statute of Limitations**

The NFLPA first argues that the plaintiff's vacatur claim is barred by the Act's statute of limitations.  See NFLPA's Mem. at 10.  The plaintiff responds that the "[A]ward was procured by corruption, fraud, or other undue means" and that, since he first learned that "his appeal hearing did not use [American Arbitration Association] rules [i]n March of 2019," the statute of limitations did not begin to run until that time.  Pl.'s Opp'n to NFLPA's Mot. at 36.

The Act provides that "a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added); see Thermal Dynamic Int'l, Inc. v. Safe Haven Enters., LLC, Civ. Action No. 13-00721 (CKK), 2016 WL 3023983, at *8 (D.D.C. May 25, 2016) ("Section 12 of the . . .  [Act] governs motions to vacate, modify, or correct arbitration awards.").  "[C]ourts

---

(. . . continued)

("Paragraph 52 of the [p]laintiff's compla[in]t mentions the vacatur of the arbitration award according to Section 10(a) of the . . . Act."), and"[t]o the extent there are conflicts between state arbitration law and the [Act] that would contravene the pro-arbitration policies embodied in the [Act], the [Act] applies and preempts such state laws[,]" Haire v. Smith, Currie & Hancock LLP, 925 F. Supp. 2d 126, 130 (D.D.C. 2013).  Accordingly, the Act, rather than the District of Columbia arbitration statute, governs the plaintiff's claims.

have consistently interpreted the [Act's] notice provision to create a strict deadline." Argentine Republic v. Nat'l Grid Plc, 637 F.3d 365, 368 (D.C. Cir. 2011); see Dalal v. Goldman Sachs & Co., 541 F. Supp. 2d 72, 76 (D.D.C. 2008) ("There is no statutory or common law exception to this time limitation."), aff'd, 575 F.3d 725 (D.C. Cir. 2009); see also Piccolo v. Dain, Kalman & Quail, Inc., 641 F.2d 598, 600 (8th Cir. 1981) ("A party to an arbitration award who fails to comply with the statutory precondition . . . forfeits the right to judicial review of the award.").

Here, the plaintiff filed his initial Complaint nearly three years after the Arbitration Award was rendered—far beyond the scope of the Act's three-month statute of limitations period. Compare Am. Compl. ¶ 11 (alleging that the Arbitration Award was issued on April 3, 2016), with Compl. at 1 (initiating this civil action on April 2, 2019). The plaintiff's claim is therefore time-barred under the Act. See Thermal Dynamic, 2016 WL 3023983, at *8 (holding that the motion to vacate award was untimely because the party "chose to wait [eleven] months after delivery of the [a]rbitration [a]ward"); Dalal, 541 F. Supp. 2d at 76 (holding that a motion to vacate award was untimely where the plaintiff filed his complaint six months after receiving the award).

The plaintiff's counterargument is unavailing. Although, as the plaintiff correctly notes, see Pl.'s Opp'n to NFLPA's Mot. at 39, under the Act, the Court may vacate an award where the award was "procured by corruption, fraud, or other undue means," 9 U.S.C. § 10(a)(1), the Court may only do so within the Act's statute of limitations period, as "[t]here is no statutory or common law exception to this time limitation[,]" Dalal, 541 F. Supp. 2d at 76. Because the plaintiff initiated this civil action outside of the statute of limitations period, his assertion of corruption, fraud, or undue means is therefore time-barred.

Moreover, even if the plaintiff's vacatur claim was not time-barred, it would still fail.  As a preliminary matter, a "party seeking vacatur [on the grounds of corruption, fraud, or other undue means] must demonstrate by clear and convincing evidence that its opponent actually engaged in fraudulent conduct or used undue means during the course of the arbitration." ARMA, S.R.O. v. BAE Sys. Overseas, Inc., 961 F. Supp. 2d 245, 254 (D.D.C. 2013) (emphasis added).  Here, the plaintiff alleges that the arbitrator who issued the Arbitration Award—not the NFLPA—"procured the [Arbitration] Award through deception as the [a]rbitrator pretended to conduct the [p]laintiff's hearing according to . . . the [American Arbitration Association rules]." Am. Compl. ¶ 51.  Additionally, a party seeking vacatur "must show that the fraud could not have been discovered before or during the arbitration through the exercise of reasonable diligence." ARMA, S.R.O., 961 F. Supp. 2d at 254.  Here, however, the plaintiff alleges that he was aware that his "appeal hearing was not conducted according to the [American Arbitration Association rules]" in June 2016, and not in March 2019, as the plaintiff now asserts in his opposition.  Am. Compl. ¶ 12 (alleging that the plaintiff "contacted the [American Arbitration Association] to file a complaint against the [a]rbitrator" in June 2016, and after a call with an American Arbitration Association representative, he learned that his "appeal hearing was not conducted according to the [American Arbitration Association rules]"); see Pl.'s Opp'n to NFLPA's Mot. at 39.

Accordingly, the Court concludes that the plaintiff's vacatur claim against the NFLPA is time-barred under the Act, and that even if the plaintiff's claim was not time-barred, the plaintiff has failed to state a cognizable claim against the NFLPA.

## 2.   Whether the Plaintiff's Common Law Claims Constitute a Collateral Attack on the Arbitration Award

The NFLPA next argues that the plaintiff's remaining common law claims against the NFLPA must be dismissed under the Act because these claims constitute an impermissible collateral attack on the Arbitration Award.  See NFLPA's Mem. at 11.  The plaintiff fails to respond to the NFLPA's arguments on this point.  See generally Pl.'s Opp'n to NFLPA's Mot.

It is well-established that "[t]he [Act] provides the exclusive remedy for challenging conduct that taints an arbitration award within the Act's coverage."  Pisciotta v. Shearson Lehman Bros., 629 A.2d 520, 523 (D.C. 1993) (internal quotation marks omitted).  Thus, where a party who participated in an arbitration brings claims in federal court seeking damages for alleged wrongdoings that "compromised the arbitration award" and caused the party injury, such claims are "no more, in substance, than an impermissible collateral attack on the award itself" and must be dismissed in accordance with the Act.  Corey v. N.Y. Stock Exch., 691 F.2d 1205, 1211–12 (6th Cir. 1982) (concluding that the plaintiff's attempt to sue the New York Stock Exchange for the arbitrator's actions constituted an "impermissible collateral attack on the award itself[,]" where the plaintiff's complaint had "no purpose other than to challenge the very wrongs affecting the award[,]" and noting that the Act provides the "exclusive remedy for challenging acts that taint an arbitration award"); see also Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp., 512 F.3d 742, 750 (5th Cir. 2008) (explaining that "[t]hough cloaked in a variety of federal and state law claims[,]" the relief sought by plaintiff "show[ed] that its true objective in this suit [was] to rectify the harm it suffered in receiving the unfavorable [award]"); Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 910 (6th Cir. 2000) (holding that "[b]ecause [the plaintiff] chose to attack collaterally the arbitration award in violation of the [Act], she fails to state a claim upon which relief may be granted[,]" and noting

that in order to properly challenge the award, the plaintiff "should have filed a motion to vacate the arbitration award under the [Act]").

Here, the "ultimate objective" of the plaintiff's lawsuit against the NFLPA "is to rectify the alleged harm" he suffered from the adverse Arbitration Award that affirmed the NFLPA's denial of his Application for Certification as a Contract Advisor.  Decker, 205 F.3d at 910.  And, the plaintiff's common law claims against the NFLPA directly challenge the arbitration process and the final Arbitration Award itself.  See, e.g., Am Compl. ¶ 17 ("[T]he NFLPA breached the contract with the [p]laintiff by not conducting the [p]laintiff's [arbitration] hearing according to the 'Voluntary Labor Arbitration Rules' of the [American Arbitration Association]."); id. ¶ 18 ("[T]he NFLPA breached the contract with the [p]laintiff when the [a]rbitrator did not render a decision at the close of the hearing or within thirty [ ] days after the hearing."); id. ¶ 19 ("[T]he NFLPA breached the contract with the [p]laintiff when the [a]rbitrator extended the timeframe to provide a written decision without written agreement from the [p]laintiff."); id. ¶ 54 ("[T]he extreme and outrageous conduct on the part of the NFLPA . . . [resulted from] having [the] [p]laintiff participate in an appeal hearing not governed by the [American Arbitration Association rules]  . . . [and] violat[ing] the [Agent] Regulations and the [Act] in order to secure an adverse ruling.").

Each of the plaintiff's common law claims against the NFLPA seek damages for alleged wrongdoings on the part of the arbitrator and the NFLPA that, in the plaintiff's view, "compromised the [ ] [A]ward[,]" Corey, 691 F.2d at 1211, resulting in the adverse ruling. However, in order to properly challenge the Arbitration Award, the plaintiff should have filed a timely motion to vacate the Arbitration Award pursuant to the Act.  See Decker, 205 F.3d at 910. Now that the Act's statute of limitations period has expired, see discussion supra Part III.A.1, the

plaintiff's common law claims against the NFLPA constitute an impermissible collateral attack on the Arbitration Award.  See Corey, 691 F.2d at 1213 ("The three month notice requirement in section 12 [of the Act] is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period provided for in section 12.").

Accordingly, because all of the plaintiff's claims against the NFLPA are either time-barred by the Act or constitute an impermissible collateral attack on the Arbitration Award, the Court must grant the NFLPA's motion to dismiss the plaintiff's claims against the NFLPA pursuant to Rule 12(b)(6) for failure to state a claim.

**B.**      **Smith's Motion to Dismiss**

DeMaurice Smith moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on the grounds that this "action is time-barred" because the plaintiff "seeks to vacate . . .[the] [Arbitration] Award that was issued in April 2016—i.e., more than three years ago"—in violation of the Act's statute of limitations, Smith's Mem. at 2, and the Amended Complaint "asserts no claim against Smith at all" because the Amended Complaint's "only references to Smith are allegations that he is a 'person of authority' at the NFLPA and that [the plaintiff] allegedly 'blind carbon copied' him on a letter to another NFLPA employee three years ago complaining about what he believed to be an 'unfair appeal process' that affirmed the denial of his Application for Certification as an NFLPA Contract Advisor[,]" id. at 5.  The plaintiff responds by asserting that corporate officials may be held "liable for torts which they commit, participate in, or inspire."  Pl.'s Opp'n to Smith's Mot. at 12–13.

Here, the Amended Complaint fails to assert a claim against Smith.  None of the plaintiff's counts even mention Smith, let alone allege that he committed any wrongdoing

sufficient to impose liability.  <u>See</u> Am. Compl. ¶¶ 15–59.  Rather, the plaintiff's claims allege

wrongdoing by the NFLPA and Prometric.  <u>See</u> <u>id.</u>  Because an officer's liability "must be

premised upon a corporate officer's meaningful participation in the wrongful acts[,]" <u>Carty v.</u>

<u>CVS Pharmacy, LLC</u>, 264 F. Supp. 3d 190, 195 (D.D.C. 2017), rather than "the officer's

position in the corporation," <u>Partridge v. Am. Hosp. Mgmt. Co.</u>, 289 F. Supp. 3d 1, 15 (D.D.C.

2017), the plaintiff's allegation that Smith is a "person of authority" at the NFLPA, Am. Compl.

¶ 12, without more, is insufficient to create personal liability.  And, even if the plaintiff had

asserted claims against Smith, such claims would warrant dismissal for the same reasons that the

plaintiff's claims against the NFLPA must be dismissed, i.e., because the plaintiff's attempt to

vacate the Arbitration Award is barred by the Act's statute of limitations, and the plaintiff's

common law claims constitute an impermissible collateral attack on the Arbitration Award.  <u>See</u>

discussion <u>supra</u> Part III.A.  Accordingly, because the plaintiff does not properly assert any

claims against Smith, and—even if he did, such claims would be time-barred—the Court must

grant Smith's motion to dismiss to the extent that it seeks dismissal of the plaintiff's claims

against Smith pursuant to Rule 12(b)(6).

## C.      Prometric and Sawicki's Motions to Dismiss

Prometric and Michael Sawicki move to dismiss the Amended Complaint pursuant to

Rule 12(b)(1) on the ground that there is no diversity or federal question jurisdiction that

provides a basis for this Court to have jurisdiction over the plaintiff's claims against them.  <u>See</u>

Prometric's Mem. at 5–6; Sawicki's Mem. at 8–9.  The plaintiff responds that Court has federal

question jurisdiction over the plaintiff's claim for violating the Act, and that in any event the

Court should exercise supplemental jurisdiction over the plaintiff's claims against Smith and

Prometric because they "are so related that they form part of the same 'case or controversy[.]'" Pl.'s Opp'n to Sawicki's Mot. at 5; see Pl.'s Opp'n to Prometric's Mot. at 8.

First, there is no diversity jurisdiction as to the plaintiff's claims against Prometric and Sawicki.  For the Court to exercise diversity jurisdiction, (1) the amount in controversy must exceed $75,000, and (2) there must be complete diversity among the litigants.  See 28 U.S.C. § 1332 (2018); Busby v. Capital One, N.A., 932 F. Supp. 2d 114, 129–30 (D.D.C. 2013). Complete diversity requires that "no plaintiff may have the same citizenship of any defendant." Busby, 932 F. Supp. 2d at 130.  Here, the plaintiff is a resident of the state of Maryland, see Am. Compl. at 1 (listing a Maryland address for the plaintiff), as are both Prometric and Sawicki, see Sawicki Decl. ¶ 3 (representing that Sawicki resides in Maryland); id. ¶ 5 (representing that Prometric's principal place of business is in Maryland).  Accordingly, the plaintiff alleges no basis for diversity jurisdiction as to these defendants.

Second, there is also no federal question jurisdiction as to the plaintiff's claims against Prometric and Sawicki because the action does not arise under the "Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The plaintiff fails to allege any question arising under federal law, aside from Count VI, which is styled as "Violation of the Federal Arbitration Act." See Am. Compl. ¶¶ 46–52.  However, the plaintiff does not allege that Prometric or Sawicki committed any violations of the Act in Count VI.  See id.  Instead, he only alleges in Count II that Prometric committed the wrong of tortious interference with contractual relations, and the plaintiff fails to mention Sawicki in any of the counts.  See id. ¶¶ 23–25.  In any event, even if the Amended Complaint alleged that Prometric and Sawicki committed violations of the Act, "[t]he clear weight of authority holds that the [Act] as a whole does not vest independent jurisdiction in a [f]ederal [d]istrict [c]ourt."  Bangor & Aroostock R.R.  v. Maine Cent. R.R., 359

F. Supp. 261, 262 (D.D.C. 1973); see Warren Bros. Co. v. Cmty. Bldg. Corp. of Atlanta, 386 F.

Supp. 656, 658 (M.D.N.C. 1974) ("The . . . Act does not provide an independent basis for federal

jurisdiction since it does not confer federal question jurisdiction upon federal courts.").  Thus,

the Act "requir[es] . . . an independent jurisdictional basis over the parties' dispute" for a party to

gain access to a federal forum, Vaden v. Discover Bank, 556 U.S. 49, 59 (2009) (first alteration

in original) (internal quotation marks omitted), and "before a federal court can apply the Act, it

must already have jurisdiction over the subject matter through another source such as diversity of

citizenship or federal question[,]" Warren Bros. Co., 386 F. Supp. at 659.  The Court has already

concluded that the plaintiff has failed to establish any independent basis for this Court to exercise

federal subject matter jurisdiction over his claims against Prometric and Sawicki.  Moreover,

despite the plaintiff's arguments to the contrary, the Court cannot exercise supplemental

jurisdiction over the plaintiff's claims against Prometric and Sawicki because "incomplete

diversity destroys original jurisdiction with respect to all claims, leaving nothing to which

supplemental claims can adhere."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546,

546 (2005).

Accordingly, because the Court does not have subject matter jurisdiction over the

plaintiff's claims against Prometric and Sawicki, it must grant their motions to dismiss to the

extent that they seek dismissal of the plaintiff's claims against Prometric and Sawicki pursuant to

Rule 12(b)(1).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the NFLPA's motion to

dismiss.  The Court also concludes that it must grant in part and deny as moot in part Smith's,

Prometric's, and Sawicki's motions to dismiss.  Specifically, the Court will (1) grant Smith's

motion to the extent that it seeks dismissal of the plaintiff's claims against Smith pursuant to Rule 12(b)(6); (2) grant Prometric's motion to the extent that it seeks dismissal of the plaintiff's claims against Prometric pursuant to Rule 12(b)(1); (3) grant Sawicki's motion to the extent that it seeks dismissal of the plaintiff's claims against Sawicki pursuant to Rule 12(b)(1); and (4) deny as moot those motions in all other respects.

**SO ORDERED** this 6th day of May, 2020.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.